IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIMBERLY REYNOLDS,** *Parent and Next Best Friend of J.R., A Minor*                                      **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO. 1:19-cv-426-TBM-RPM**

**GEORGE COUNTY SCHOOL DISTRICT**                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Attorneys' fees can be granted to plaintiffs under many federal statutes, and the Individuals with Disabilities Education Act, or IDEA, is no exception. To prevail, a party must demonstrate it received a remedy (1) that altered its legal relationship with the other party and (2) that fosters the purposes of IDEA. Kimberly Reynolds asserts she is a prevailing party because an order from a hearing officer ensured her child would be placed in an independent school.

This Court agrees. The Hearing Officer's order provided Reynolds with a remedy that altered her child's relationship with the George County School District in furtherance of IDEA's purposes. But this Court does not award Reynolds all the fees she seeks. Because that placement decision represented only one facet of the hearing officer litigation, and because the District succeeded on all other facets, this Court reduces the awarded fees accordingly.

### I. BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are enumerated in this Court's prior opinion. *See* [23]. Some brief background is provided here.

Reynolds's child attended schools within the George County School District. The District identified him as disabled and over the course of several years formulated education plans for him. Unsatisfied with her child's education, Reynolds requested a due process hearing

under IDEA on August 6, 2018. [23], p. 11. Her complaint raised various procedural and substantive issues, including not being properly informed about IDEA procedures, the District failing to appropriately mainstream her child into a normal learning environment, and the District failing to provide proper diagnostic support and other assistance to her child. [1-1], pp. 2-3.

Reynolds ultimately retained three attorneys to represent her and her child at the due process hearing. Elliot Burch attended church with Reynolds and, while a licensed Mississippi attorney, felt that IDEA litigation was outside his normal practice. He agreed to represent Reynolds and assist with sponsoring more accomplished out-of-state counsel to conduct the substance of the hearing. [28-12], pp. 1-2. Reynolds then located Henry Cassady and James Sears, two Alabama attorneys with significant IDEA litigation experience. Both were admitted *pro hac vice* with Burch as the local attorney. [28-12], pp. 2-3.

The due process hearing lasted fourteen days over the course of roughly ten months. On May 3, 2019, the Hearing Officer issued his opinion. It rejected virtually all of Reynolds's claims and found that her child had received an adequate state-sponsored education. In the conclusion of his order—under a heading entitled "RELIEF GRANTED"—the Hearing Officer did conclude though that

> [the] District having admitted during the course of this hearing that it is no longer the Least Restrictive Environment for the education of the Student and that the proper placement for the Student is in a special school, said District is hereby ordered to, within 60 days, both convene an [education plan] meeting and provide an [education plan] for the Student that places him in a special school[.]

[1-1], p. 38. Dissatisfied with the Hearing Officer's adjudication of her claims, Reynolds appealed to this Court. Following this Court's earlier order, [23]—which repudiated some of the Hearing Officer's findings—she has now moved for attorneys' fees.

2

## II. ANALYSIS

Again, Reynolds's motion for fees is authorized under IDEA. It provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). Thus, before reaching the question of reasonable fees, this Court must consider if Reynolds is a prevailing party.

### A. Who can be a prevailing party?

In the Fifth Circuit "a prevailing party is one that attains a *remedy* that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *Parker ex rel. Krawietz v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 677 (5th Cir. 2018) (quoting *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998)). This Court will examine each of these three points in turn: remedy, altering the legal relationship, and the purposes of IDEA.

To begin, remedy has a broad meaning in the Fifth Circuit. "[A] litigant does not need to obtain the same relief she requested at the outset of the proceeding in order to qualify as a 'prevailing party' under IDEA. Rather, she need only obtain a remedy 'which achieves some of the benefit [she] sought in bringing [the claim].'" *Id.* at 678 (quoting *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 713 F.3d 268, 270 (5th Cir. 2013)). However, "the relief obtained must be 'a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief.'" *Alief Indep. Sch. Dist.*, 713 F.3d at 270 (quoting *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422 (5th Cir. 2009)).

Next, for a remedy to qualify an individual as a prevailing party, the remedy must alter the school district and child's legal relationship. *Id.* at 677. "[E]nforceable judgments on the merits

3

and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (quoting *Tx. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)). Implicit in that standard is that the remedy carry a "judicial imprimatur." *Tracey K. ex rel. Lauren C. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018) (quoting *Richard R.*, 591 F.3d at 422 n.4). "Judicial" is not limited to courts, it can refer to orders from administrative hearing officers as well. *Id.* But, a defendant's change in conduct that is voluntary, i.e., not mandated by a court order "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit," consequently does not qualify as a material change. *Buckhannon Bd. & Care Home*, 532 U.S. at 605.

Finally, "[t]o determine whether particular forms of relief foster the purposes of [IDEA], the critical question is whether a handicapped child receives any appropriate special services necessary to education that the child had not requested prior to the request for a due process hearing." *Tracey K.*, 904 F.3d at 376 (quoting *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1195 (5th Cir. 1990)).

**B. Has Reynolds demonstrated that she is a prevailing party?**

Reynolds advances two arguments that she is entitled to attorneys' fees; one is premised on the Hearing Officer's order and the other is premised on this Court's order of September 28, 2022 [23]. Reynolds first raises the September 2022 order, so this Court begins there.

4

### 1. The September 2022 Order

As an initial matter, both parties spend some time addressing this Court's concluding statement on page 36 of the order. It reads,

> [t]herefore, this Court may, in its discretion, award attorney's fees to Reynolds as a prevailing party. However, since the Court found that a FAPE was provided prior to October 25, 2017, any award would be limited to the amount of costs and attorney's fees associated with presenting [the child's] case on the denial of a FAPE from after that date.

[23], p. 36. Just based on the plain text of that order, this Court never found that Reynolds was a prevailing party. Instead, the Order merely states that any basis for Reynolds to be awarded fees was as a prevailing party. The purpose of this language was to alert the parties that this Court was entertaining exercising its discretion to award fees, pointing them to the relevant law for this matter, and signaling that this issue was a matter for further proceedings.

Turning now to the prevailing party standard laid out above, Reynolds must demonstrate she received some remedy. But this Court's Order did not provide one. While the Order concluded that her child had been denied an appropriate state-sponsored education, it specifically noted that "Reynolds conceded that she no longer desired any specific action by the District. Instead, the only remedy she seeks is attorney's fees." [23], p. 36. As evidenced by the current motion, that order did not award attorneys' fees. Without a remedy, Reynolds cannot be a prevailing party. *See Parker*, 900 F.3d at 677. Therefore, that order cannot form the basis of a grant of attorneys' fees.

### 2. The Hearing Officer's Order

That leaves the Hearing Officer's order as the only means to support Reynolds's motion. Again, this Court must begin by asking what remedy that order provided.

5

### i. Remedy

As laid out above, the order contained a section entitled "RELIEF GRANTED." That section provided

> [t]hat Respondent District having admitted during the course of this hearing that it is no longer the Least Restrictive Environment for the education of the Student and that the proper placement for the Student is in a special school, said District is hereby ordered to, within 60 days, both convene an [education plan] meeting and provide an [education plan] for the Student that places him in a special school[.]

[1-1], p. 39. To determine if this is a remedy provided to Reynolds, this Court must answer if it "achieves some of the benefit [she] sought in bringing [her claim]." *Parker*, 900 F.3d at 678.

Initially, Reynolds's complaint did not ask for her child to be placed in a different school. Rather, she "asked first, for placement . . . in the District with an evaluation . . . and that a Registered Behavior Technician, trained in working with autistic children . . . be provided as a one-to-one aide" until the aide was no longer needed. [1-1], pp. 36-37. Then, at the beginning of the hearing, Reynolds alternatively "asked for placement at [a particular] Private School." [1-1], pp. 36-37. Of course, as excerpted above, the Hearing Officer did not order the District to place Reynolds's child in the particular private school she requested. Instead, he ordered that the District evaluate special school options and produce an education plan that placed the child in one of those schools. [1-1], p. 38.

But, under the Fifth Circuit's understanding of remedy, Reynolds did not need to achieve the exact goal she set out for to receive a remedy; she only needed to achieve some of the benefit she was seeking by bringing her claim. *Parker*, 900 F.3d at 678. In *Parker*, the hearing officer "rejected the primary relief [the student's] family sought[.]" *Id.* at 677. But, the Fifth Circuit still found the family had achieved a remedy because the hearing officer required the school district "to comply with its duties under the IDEA." *Id.* The order in this case—where the District was

"hereby ordered to . . . both convene an [education plan] meeting and provide an [education plan] for the Student"—is markedly the similar to *Parker*. As the Fifth Circuit has said "[t]he type of victories, short of total success, to which the Supreme Court has been willing to ascribe prevailing party status are in the nature of settlement agreements enforced though a consent decree, partial success on the merits, injunctive relief, declaratory relief, and nominal damages." *Alief Indep. Sch. Dist.*, 713 F.3d at 271. This placement order aligns with that requirement.

The Seventh Circuit also has two decisions that illuminate this point. First, in *T.D. v. LaGrange School District No. 102*, 349 F.3d 469, 480 (7th Cir. 2003), the Seventh Circuit considered a case where a student succeeded on some of the claims he brought, but not others. The Seventh Circuit still held he was a prevailing party because, while he was not reimbursed for various costs associated with the independent school he had attended, the hearing officer required that he be evaluated by his school district so that he could obtain access to the services the independent school provided him in a state-sponsored setting. *T.D.*, 349 F.3d at 480. Similarly, while Reynolds did not obtain an order placing her child in a particular school, the Hearing Officer directed the District to place him in a school that would provide the benefits that Reynolds sought.

Second, in *Linda T. ex rel William A. v. Rice Lake Area School District*, 417 F.3d 704, 709 (7th Cir. 2005), the Seventh Circuit considered a suit where parents brought two claims: that their child's education plan required greater specificity and that their child should be placed in an independent school. There, the Seventh Circuit found that the parents were not prevailing parties because they lost on the placement claim but succeeded on the plan specificity claim. It held that the specificity claim was only a technical or *de minimis* victory, especially when viewed against the backdrop of their loss on the placement claim. *Linda T.*, 417 F.3d at 708-09. The

7

placement issue "was the most important in the context of the administrative proceeding as a whole," and the order from the Hearing Officer "did not require the provision of any additional or different services" to the child. *Id.* Conversely, Reynolds lost on her other claims, but still succeeded in obtaining a placement for her child in an independent school. While the other claims were significant, the claim she succeeded on resulted in substantial—not *de minimis*—changes for her child.

Here, Reynolds's claim aligns with *T.D.* and is distinguishable from *Linda T*. As a result of her suit, her child experienced significant changes in his educational plan; he was going to be sent to an independent school for specialized schooling. This is not the sort "of 'de minimis' or 'technical victory'" that cannot support prevailing party status. *Alief Indep. Sch. Dist.*, 713 F.3d at 270 (citing *Tx. State Tchrs. Ass'n*, 489 U.S. at 792-93). Just like in *Linda T* and in *Parker*, Reynolds achieved some substantial partial success: she achieved placement of her child at an independent school. Therefore, she has received some of the benefit she sought in bringing her suit and this element is met.

### ii. The Legal Relationship

Next, Reynolds must demonstrate that the Hearing Officer's order effected a material alteration in her child's relationship with the District. *Buckhannon Bd. & Care Home*, 532 U.S. at 605. At the outset, this element seems met. Reynolds obtained an order which directed the District to change its behavior by placing her child in an independent school. *Tracey K.*, 904 F.3d at 375 ("We have explained in the IDEA context that 'a plaintiff "prevails" when actual relief on the merits of [her] claim materially alters the legal relationship by modifying the defendant's behavior in such a way that directly benefits the plaintiff.'"). This element focuses on the "legal

relationship" between the parties, not what that relationship looks like practically between the parties. *See Alief Indep. Sch. Dist.*, 713 F.3d at 270.

But the District argues that its voluntary change in conduct defeats Reynolds's claim. It asserts that the only reason that the Hearing Officer decided to order an independent school placement was because the District conceded that it could no longer provide an adequate state-sponsored education. The District is correct that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon Bd. & Care Home*, 532 U.S. at 605. But that distinction rests on the presumption that the voluntary change or admission did not result in a judicially enforceable order. *Id.* In *Buckhannon*, the Supreme Court faced a situation where a plaintiff had filed suit challenging state regulations, regulations which were subsequently amended by the state legislature to remove the complained of provisions. *Id.* at 600. While the plaintiff obtained the relief it was seeking when it had filed suit, the Court rejected the notion that the plaintiff was a prevailing party. The rationale was that the plaintiff had succeeded through extra-judicial, unenforceable means. *Id.* at 607-10

That conclusion contrasts strongly with Reynolds's situation. Here, Reynolds is not relying on a letter from the District agreeing to work with Reynolds on school placement. Reynolds has an order from a hearing officer mandating conduct from the District. And, as noted, in the Fifth Circuit, "[i]t is settled that 'an administrative hearing officer's order provides the requisite "judicial imprimatur" for a party to be considered a "prevailing party" for attorneys' fee purposes[.]'" *Tracey K.*, 904 F.3d at 374 (quoting *El Paso Ind. Sch. Dist. v. Richard R.*, 591 F.3d 286, 292 (5th Cir. 2009)).

The "key consideration" here is not whether the District tipped the litigation one way or another, but whether Reynolds could enforce this order should the District decide to disobey it. *See Susanna H. ex rel. G.B. v. Easton Area Sch. Dist.*, 264 F. Supp.3d 690, 694 (E.D. Pa. 2017) ("whether the material alteration of the parties' relationship is judicially sanctioned, the key consideration is whether the change is enforceable." (citing *Raab v. City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016))). Again, as the Fifth Circuit has said "the relief obtained must be 'a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief.'" *Alief Indep. Sch. Dist.*, 713 F.3d at 270. It is settled Fifth Circuit law that Reynolds received such relief; a hearing officer's order is "judicially sanctioned relief." *See Tracey K.*, 904 F.3d at 374.

Because the order is enforceable, and materially changed the relationship between Reynolds's child and the District, this element is also met. *See J.D. ex rel. Davis v. Kanawha Cnty. Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009) (noting that "receiving legal relief from the hearing officer" in the form of an enforceable judgment qualified a parent as a prevailing party); *Jefferson Cnty Bd. of Educ. v. Bryan M.*, 706 F. App'x 510, 515-16 (11th Cir. 2017) (finding that even an order merely requiring a local board to follow IDEA or properly produce an education plan qualified as an enforceable judgment).

### iii. The Purposes of IDEA

For the final element, courts ask "whether a handicapped child receives any appropriate special services necessary to education that the child had not requested prior to the request for a due process hearing." *Tracey K.*, 904 F.3d at 376. Reynolds's child received such relief with the independent school placement, something that had not been sought prior to the request for the due process hearing, and something which was designed to ensure the child received an adequate state-sponsored education. *See id.* (noting that the relief that was obtained "effected no change"

to the child's education plan and so did not meet this element). Reynolds has therefore met this element.

Because each of these elements are met, Reynolds is a prevailing party and this Court finds she is entitled to attorneys' fees.

**C. What fees is Reynolds entitled to?**

Now, this Court must decide what fees are reasonable. "The calculation of attorneys' fees involves a well-established process. First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 208-09 (5th Cir. 1998). "The court then considers whether the lodestar figure should be adjusted; in making such an adjustment, the court looks to the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)[.]" *Id.*

"[T]he lodestar method yields a fee that is presumptively sufficient" for reasonable fees, and that "presumption is a 'strong' one." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). This is because many of the *Johnson* factors are usually "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Because of that likely inclusion, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

In this case, Reynolds seeks fees for three attorneys with varying degrees of experience and expertise: Burch, Cassady, and Sears.

1. **The Rates**

A reasonable rate is calculated by considering market rates, and "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.'" *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998)). That local or market rate is generally "established through affidavits of other attorneys practicing there." *Id.*

Reynolds seeks a $200 an hour rate for Burch, a $325 an hour rate for Cassady, and a $375 an hour rate for Sears. Burch was admitted to the Mississippi Bar in 2017 and has been continually practicing for the six years since. [28-12], p. 1. According to his affidavit, he "had never heard of the Individuals with Disabilities Education Act" and once Reynolds found attorneys from out-of-state he "agreed to serve as *pro hac vice* counsel." [28-12], pp. 2-3. Under Mississippi's *pro hac vice* rules he was required to "personally appear and participate in all trials, and unless specifically excused from such appearance by the court or administrative agency, in all pretrial conferences, hearings, other proceedings conducted in open court and all depositions or other proceedings in which testimony is given in this state." Miss. R. App. Pro. 46(b)(4). Cassady was admitted to the Alabama Bar in 1990, and after three years of clerking at a federal district court has been continually practicing in Alabama for the thirty years since. [28-17], p. 2. He holds a certification in Special Education Advocacy from the William & Mary Law School Institute of Special Education Advocacy, and has tried multiple IDEA and civil rights suits. [28-17], pp. 2-3. Sears was admitted to the Alabama Bar in 1988 and has practiced in the state since then. [28-15], pp. 1-3. He also holds a Doctorate in Education focusing on Special Education and has served as a special education professor at the University of Alabama. [28-15], pp. 1-2. He has tried multiple IDEA suits. [28-15], p. 24.

Burch, Cassady, and Sears each submitted declarations supporting their claimed rates as well as each other's rates. [28-12], [28-15], [28-17]. Reynolds has also filed declarations from Troy T. Schwant, [28-11], and Julian D. Miller, [28-9], each attesting to appropriateness of the proposed hourly rates. Schwant was admitted to the Mississippi Bar in 2001 and has practiced in the Southern District of Mississippi and the Southern District of Alabama since then. [28-11], p. 1. Miller graduated from the University of Mississippi School of Law in 2012, served as a law clerk at the Mississippi Court of Appeals, and has practiced in Mississippi since then. [28-9], pp. 1-2.

In addition to these affidavits, this Court has reviewed orders awarding attorneys' fees in other IDEA cases over the past five years. These cases reflect approved rates ranging from $200 an hour to $460. *See J.S.R. v. Dale Cnty Bd. of Educ.*, No. 1:13-cv-582, 2016 WL 79986, *3 (M.D. Ala. Jan. 6, 2016) (approving rates of $200 and $250); *J.P. ex rel. A.W. v. Elmore Cnty Bd. of Educ.*, No. 2:19-cv-636, 2021 WL 2012303, *3 (M.D. Ala. May 20, 2021) (approving rates of $300 and $325 for Cassady and co-counsel); *M.M. ex rel L.M. v. Henry Cnty Bd. of Educ.*, No. 3:18-cv-37, 2021 WL 236307, *7 (E.D. Ky. Jan. 22, 2021) (approving rate of $325); *D.L. v. St. Louis City Pub. Sch. Dist.*, No. 4:17-cv-1773, 2019 WL 1359282, *2-3 (E.D. Mo. Mar. 26, 2019) (approving rates of $300 and $400); *Flood v. District of Columbia*, 172 F. Supp.3d 197, 221 (D.D.C. 2016) (approving rate of $460). The rates requested by Reynolds are certainly within the general realm for an IDEA case. Further, they accord with rates approved in other complex litigation in this district. *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-cv-433-HSO, 2014 WL 691500, *14-17 (S.D. Miss. Feb. 21, 2014) (approving various rates exceeding $350); *Trout Point Lodge Ltd. v. Handshoe*, No. 1:12-cv-90-LG, 2013 WL 6524650, *6-7 (S.D. Miss. Dec. 11,

2013) (approving $250 rate); *C.H. v. Rankin Cnty Sch. Dist.*, No. 3:08-cv-84-DPJ, 2010 WL 11682312, *4 (S.D. Miss. Jul. 29, 2010) (same).

This Court finds that the rates are appropriate and accepts them for the lodestar calculation.

### 2. The Hours

Next, courts must examine the billing records submitted and determine if the hours billed are reasonable. *Rigsby*, 2014 WL 691500 at *14. Reynolds has submitted billing records claiming 105.7 hours for Burch, 243.6 hours for Cassady, and 120.85 hours for Sears. After reviewing these records, this Court has concluded that Burch's hours should be reduced by 4.7 hours for work not directly related to this case, Cassady's hours should not be reduced, and Sears's hours should be reduced by 4 hours for mistakenly duplicative billing. This leads to a lodestar of $19,480 for Burch's work,[1] $77,837.50 for Cassady's work, and $43,818.75 for Sears's work—in total $141,136.25.

### 3. The *Johnson* factors

Finally, this Court must apply the *Johnson* factors to ensure these lodestars align with the reality of the case. These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Black*, 732 F.3d 492, 502 n.7 (5th Cir. 2013).

---

[1] Burch only billed a $50 an hour rate for certain travel hours.

First, the time and labor required. Under this factor, "[t]he trial judge should weight the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson*, 488 F.2d at 717 *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 393, 103 L. Ed. 2d 67 (1989). Much of the time billed here relates to preparation for hearings, hearings themselves, and settlement negotiations, exercises this Court is very familiar with. While individually the time spent on these activities does not strike this Court as excessive, collectively, this Court finds that given the tripartite effort, this factor weighs somewhat in favor of fee reduction.

Next, the novelty and difficulty of the questions presented. This factor provides an incentive for attorneys to take "[c]ases of first impression" by not penalizing them because they "generally require more time and effort on the attorney's part." *Id.* at 718. While IDEA litigation is not a new topic, this Court has not been able to find many cases about what a school district is to do with a child as disruptive as this child; bearing that in mind, this factor is neutral. Under the "skill requisite to perform the legal service properly," a court must "closely observe the attorney's work product, his preparation, and general ability . . . [t]he trial judge's expertise gained from past experience as a lawyer and his observation from the bench" are the basis for this determination. *Id.* Here, the briefing and representation were on par with what is expected of legal counsel in the Southern District of Mississippi, therefore this factor is also neutral.

The preclusion of other employment factor "involves the dual consideration of otherwise available business . . . foreclosed because of conflicts of interest which occur from the representation" and the time constraints imposed by the representation. *Id.* Here, the conflicts of interest portion is of little concern, in part because two of the three attorneys are out-of-state, but

15

also because of the nature of IDEA litigation. As to the time commitment, IDEA cases involve no more time than any other significant litigious undertaking: a lot of time. This factor is thus neutral.

The customary fee charged was already incorporated into the lodestar analysis, and neither party has provided any evidence related to a fixed or contingent fee structure, so these factors are irrelevant for this analysis.

The seventh factor, time limitations, reflects that "[p]riority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Id.* While this case has certainly occupied a significant amount of the attorneys' time, there is no evidence that it has preempted any other work that the attorneys have sought to pursue, or that it has been any more burdensome than any other IDEA trial matter. Therefore, this factor is neutral.

The amount involved and the results obtained is the most critical of all the *Johnson* factors. *Douglas W.*, 158 F.3d at 209. Generally, courts will reduce the attorneys' fees award when a plaintiff succeeds on some, but not all of its claims. *See D.C. v. Klein Ind. Sch. Dist.*, No. 4:19-cv-21, 2020 WL 2832968, *13 (S.D. Tex. May 30, 2020) (reducing fees by 25 percent for spending time on claims that were time-barred or ultimately unsuccessful); *S.F. v. McKinney Ind. Sch. Dist.*, No. 4:10-cv-323, 2013 WL 775529, *5 (E.D. Tex. Feb. 28, 2013) (reducing fees by 31 percent for succeeding on the gravamen of the complaint but failing on a vast majority of other claims). For instance, in *Douglas W.*, the Fifth Circuit affirmed a lodestar reduction of 75 percent when the student "prevailed on only three of nineteen issues and . . . lost on an issue on which the parties spent more than half of the time at the hearing." *Douglas W.*, 158 F.3d at 211. In

16

another case, the Fifth Circuit affirmed a 60 percent reduction when the plaintiff received a damages award that was 95 percent less than what she requested in her disclosures. *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 258 (5th Cir. 2018).

Importantly though, the Fifth Circuit "ha[s] consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney fees.'" *Gurule*, 912 F.3d at 259 (quoting *Combs v. City of Huntington*, 829 F.3d 388, 396 (5th Cir. 2016)). Instead, the question is whether "the *relief*, however significant, is limited in comparison to the scope of the litigation" on which the attorney expended its time. *Combs*, 829 F.3d at 394.

The Hearing Officer's opinion shows that Reynolds raised roughly ten issues. These were related to not being properly informed regarding IDEA procedures, not receiving her child's entire educational record, a failure by the District to provide relevant supplemental aids and services, a failure by the District to: mainstream her child, provide adequate transport for her child, provide support aides for her child, appropriately evaluate her child, provide physical education and socialization to her child, her child's entitlement to compensatory education, and her entitlement to reimbursement for transporting her child. Those claims all related to the 2016-17 and 2017-18 school years. As noted, Reynolds also sought relief related to her child's school placement. That claim was the only one she succeeded on. Additionally, that issue was presented outside of her complaint at the opening of the hearing, so it is unclear how much time was actually spent in preparation on it by her attorneys.

Getting her child placed in an independent school was certainly a significant achievement. However, the litigation covered the 2016-17 and 2017-18 school years as well as prospective relief. And, as noted, Reynolds did not succeed before the Hearing Officer on any of her claims related to the 2016-17 and 2017-18 school years and won a measure of prospective relief because

17

the school district conceded that it could not provide an education to her child. This does not indicate overwhelming success on the part of her attorneys. A reduction in fees seems appropriate here, as it was in *Douglas W.* and *Gurule*. This is further borne out by this Court's earlier September 2023 order where this Court previously concluded that her child had received an adequate education "prior to October 25, 2017, [so] any award would be limited to the amount of costs and attorney's fees associated with presenting . . . [the] case . . . from after that date." [23], p. 36.

The experience, reputation, and ability of the attorneys, much like the customary fee charged, has previously been incorporated into the lodestar determination, so it is irrelevant for this analysis. The undesirability of the case is also likely inapplicable to this matter, the Fifth Circuit has said that this relates to "[c]ivil rights attorneys" who may "face hardships in their communities because of their desire to help the civil rights litigant." *Johnson*, 488 F.2d at 719. IDEA litigants generally seek to vindicate the rights of themselves or their children, but no party has provided any evidence of a stigma attached to the litigation similar to an attorney challenging a local community's conscious decision to adopt segregationist or discriminatory policies.

As the affidavits attest, none of these attorneys have a particularly long professional relationship with the client, at least no longer than is normally expected for a complex litigation matter. While Burch does have a private relationship with the Reynolds family, that aspect was already considered when calculating the lodestar fees. Therefore, this factor is neutral or weighs against a reduction.

Finally, while the fees in similar cases have been examined, the actual awards have not been. This Court has examined those cases and finds that those awards counsel a reduction of the lodestar amount here. *See J.S.R.*, 2016 WL 79986 *9 (award of $103,965); *J.P. ex rel. A.W.*, 2021

18

WL 2012303, *9 (award of $83,556.84); *M.M. ex rel. L.M.*, 2021 WL 236307, *8 (award of $32,344.66); *D.L.*, 2019 WL 1359282, *3 (award of $34,523.42); *Flood*, 172 F. Supp.3d at 221 (award of $30,958); *Trout Point Lodge*, 2013 WL 6524650, *9 (award of $48,000); *Gardner v. CLC of Pascagoula, LLC*, No. 1:15-cv-423-LG, 2020 WL 426490, *5 (award of $62,656).

The *Johnson* factors, especially the success factor,[2] on balance counsel a significant reduction of the $141,136.25 lodestar amount.

Given that Reynolds's child placement represented significant relief, a strictly proportional reduction of the lodestar by 90 percent for the unsuccessful claims is inappropriate. However, examining the entire scope of the litigation, that relief was a small proportion of the reason that the suit was brought. Further, several of the *Johnson* factors counsel reducing the lodestar fee amount. Therefore, a reduction of the lodestar by 60 percent, in line with *Douglas W.* and *Gurule* is appropriate. This leads to a final fees amount of $7,792 for Burch's work, $31,135 for Cassady's work, and $17,527.50 for Sears's work.

---

[2] The Fifth Circuit has consistently emphasized, in accord with the Supreme Court, that this factor should carry outsized weight amongst the other twelve for district courts. *See Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"); *Coleman v. Hous. Indep. Sch. Dist.*, 202 F.3d 264, *10 (5th Cir. 1999) (unpublished) ("The most critical *Johnson* factor is the degree of success obtained."); *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003); *Saizan v. Delta Concrete Prods. Co, Inc.*, 448 F.3d 795, 799 (5th Cir. 2006); *Abner v. Kansas City S. Ry. Co.*, 541 F.3d 372, 376-77 (5th Cir. 2008); *Black*, 732 F.3d at 503; *Roussell v. Brinker Intern., Inc.*, 441 F. App'x 222, 233 (5th Cir. 2011); *Norsworthy v. Nguyen Consulting & Servs., Inc.*, 575 F. App'x 247, 249 (5th Cir. 2014); *Gurule*, 912 F.3d at 261 ("Courts have long understood that the 'most critical factor' in a reasonable fee is a prevailing party's 'degree of success.'"); *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 925 n.3 (5th Cir. 2021) ("And it is certainly true that among the *Johnson* factors, we have suggested that 'the most critical factor in determining an attorney's fee award is the degree of success obtained.'"); *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) ("'[T]he most critical factor' in determining a reasonable fee 'is the degree of success obtained.'").

## III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Reynolds is entitled to $56,454.50 in attorneys' fees from the District.

THIS, the 2nd day of August 2023.

                                            TAYLOR B. McNEEL
                                            UNITED STATES DISTRICT JUDGE